## LANE *v.* SLEEPER.

A note, taken by one who is a creditor and a surety for the maker, and a mortgage to secure it, are good against creditors, if the note be not larger than the purpose of indemnity requires.

A note that had been indorsed in blank, and become the property of two, was in the possession of one of the owners, and the other, for a good consideration, bargained his interest to a third person, the three being together at the time. It was *held* that his interest passed to the purchaser.

Where two mortgage property they may bring an action for its recovery, and the tenant, not claiming under the mortgage, cannot set it up to defeat the action; and this right passes to the purchaser of the interest of one of the mortgagors, who may join with his part owner in such action.

WRIT OF ENTRY, in which the demandants claimed to

recover a certain part of a building at Meredith. The action was commenced August 25, 1845. At the trial, upon the general issue, the demandants offered in evidence a mortgage deed, executed by Charles C. Tebbitts to George L. Sibley, December 19, 1837, and with condition to secure the payment of a note, from the former to the latter, of even date, for $800, in one year, with interest.

It appeared at the trial that Tebbitts was indebted to Sibley on a note, bearing date July 25, 1837, for $250, and that Sibley had signed, as surety for Tebbitts, on the 9th of December, 1837, a note to Holbrook, Bowman & Co., for $1,400, and two notes to the Winnepiseogee Bank, for more than $900, both of which were signed by Tebbitts as principal, and the note and mortgage for $800 were made to secure Sibley for his note for $250, and his said liabilities as surety, as far as it would go — the property mortgaged being considered worth $800, and no more. The demandants also offered in evidence the note mentioned in the condition of the mortgage, upon which was the following indorsement : namely, " The within note is paid, excepting the balance remaining on an execution recovered by me at August term, court of common pleas, Strafford county, on which is due $63.81 on the first Tuesday of August, 1838, and the indorsers are to rely on the mortgage for security, without calling personally upon the maker of this note, without recourse. George L. Sibley." The note was transferred by Sibley June 2, 1845, to Charles Lane and John C. Moulton ; and Charles Lane, before the commencement of the action, for the consideration of $100, bargained his interest in it to Charles P. Lane, but made no written transfer. The note, at the time of this bargain and before, was in the possession of Moulton, who was present when the bargain was made.

On the 11th of July, 1845, a written notice, in the following words, was sent to the tenant : namely, " To Francis O. Sleeper : You are hereby notified and requested to

quit possession and deliver up the rooms, now occupied by you as a physician's office, in the building near Meredith Bridge, and until you do so we shall hold you responsible to account to us for the rent of the same. July 11, 1845." The note was signed, "John C. Moulton, by C. Lane, and Charles P. Lane."

The tenant offered evidence to show a title in the premises, derived from an attachment thereof in an action brought by John C. Tebbitts against said Charles C. Tebbitts, January 1, 1838, and a levy thereupon September 15, 1838. The tenant also offered in evidence a deed, executed by said Charles Lane and John C. Moulton, purporting to convey to Gove & Currier, for the consideration of $200, "all the right, title and interest which we have in and to the buildings and land, situate," &c., "meaning hereby to convey particularly our right in said land and building, by virtue of an assignment of a mortgage to us by George L. Sibley, given to said Sibley by Charles C. Tibbetts," &c., with condition that the deed should be void upon the payment of $200 by the grantor to Gove & Currier. This deed was executed the 9th day of July, 1845, which was previous to the alleged sale from Charles Lane to Charles P. Lane. He also moved for a nonsuit, for the reason that the plaintiffs could not join in bringing the action, and contended that the mortgage was void; that no sufficient assignment to Charles P. Lane was proved, and that there was no sufficient notice from the demandants upon the tenant to quit possession, or of their claim to the property.

A verdict was returned for the demandants, which the tenant moved to set aside, and for a new trial.

*Bell,* for the tenant. The supposed transfer of the mortgage from Charles Lane to Charles P. Lane is not proved. There was no written transfer; the note secured by it is not proved to have been sold, nor was it agreed that it

should be held by Moulton, who then had it, for Charles P. Lane. It was bargained only. The title to the mortgage was in Gove & Currier, to whom it was conveyed by Moulton and Charles Lane.

It is admitted that a conveyance of the land does not convey the mortgage, but here the right in the mortgage was conveyed, which goes beyond the land, and carries the debt. The words used in the conveyance mean what the granting party held by virtue of the assignment of the mortgage. The deed thereupon conveyed the mortgage.

*Hazelton*, for the demandants. (1) A parol assignment of the debt will pass the interest in the land mortgaged to secure it. 5 N. H. Rep. 420; 11 N. H. Rep. 55; 11 Johns. 536. This note was payable to Sibley, and indorsed; it then was transferable by mere delivery. It was transferred to Lane and Moulton, and Lane bargained his interest to Charles P. Lane. This was for a consideration, $100 paid, and Charles P. Lane became then jointly interested with Moulton. (2) The tenant, being a stranger to this title, cannot set up the deed to Gove & Currier assuming to convey it. They do not derive a title from that deed. 11 N. H. Rep. 274; 7 Johns. 278. But the deed was not effectual to convey any thing, it purporting to convey the land and not the debt. 6 N. H. Rep. 205; 5 Johns. Ch. 570; 3 Johns. 375. Besides, it was only a mortgage, and the grantees were, in contemplation of law, still the owners. 8 Pick. 272.

*Bell*, in reply. If the mortgage had been sold to Charles P. Lane it was easy to say so. But the word was, " bargained," which was ambiguous, and is consistent with the idea of agreement only. What did the deed from Lane and Moulton to Gove & Currier convey ? It was the right in the land which the party held, and that was the right which was acquired by the assignment of the mortgage.

It conveys in terms something more than the land. It passes the mortgage interest.

GILCHRIST, J. The demandants derived their title from a mortgage which Charles C. Tebbitts, on the 19th day of December, 1837, made to George L. Sibley. The tenant claims by virtue of an extent, following an attachment of the premises, in a suit against the same Charles C. Tebbitts, a little later than the day on which the mortgage was executed. This entitles the tenant to a scrutiny of the course by which the premises are supposed to have passed to the demandants.

He first avers that the mortgage is insufficient. So far as the consideration of the note secured by it is concerned, it must, upon the authority of *Haselton* v. *Guild*, 11 N. H. Rep. 390, and *Touissant* v. *Martinnant*, 2 D. & E. 101, and the other cases cited there, be pronounced to be good.

The principle of these cases is, that a note or bond for a gross sum may be taken by a surety from his principal, not exceeding his liabilities, by way of indemnity against them; that an action may be commenced upon such security, or it may be proved under a commission of bankruptcy, although the surety has not in fact been required, at the time of such a proceeding, to pay any thing.

This note was given in part to secure the indemnity of the payee as surety for the maker, and in part to secure the payment of a sum of money which was absolutely due from the maker to the payee, and that sum was materially larger than the amount apparently due upon the note when it was assigned by Sibley, and became the foundation of the proceedings that have brought on this controversy.

The next question relates to the validity of the sale and assignment of the mortgage from Charles Lane to Charles

C. Lane. The note was indorsed in blank, and was assignable, as a negotiable paper, by mere delivery. It was the property of two, who owned it in common, and not, so far as it appears, as partners, and was in the possession of one of them, who had an undoubted right, as against his associates, to retain possession of it for any purpose not improper with reference to the object for which it was delivered to the two. A delivery, therefore, by Charles Lane to Charles P. Lane would have been impossible, without the consent of Moulton, who held the note. But the law considers it a sufficient delivery, by a vendor of a chattel, to a purchaser, if he request the holder of it to be the bailee of such purchaser, and the parties all, as in the present case, assent. It is impossible to understand the case otherwise, although the word "bargain" is, as has been suggested, an equivocal one, when considered without reference to these circumstances. The payment of the price and the presence of the parties have significance enough to determine the nature of the bargain to have been that of a sale, and not a mere agreement to make a sale at a day then to arrive. Whatever the effect of the deed from Lane and Moulton to Gove & Currier might have been, it was a mere mortgage at most; and the tenant, not claiming under it, could not have set it up against the demandants, who had all the estate of the mortgagees. *Daniels* v. *Ellison*, 11 N. H. Rep. 274.

It is unnecessary, therefore, to inquire whether any thing at all passed by that deed.

The result is, there must be

*Judgment on the verdict.*